UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERNITA G.,[1]

                          Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.

_____

             DECISION and ORDER

             6:23-CV-06467-CJS

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Supplemental Security Income ("SSI") benefits.   Now before the Court are Plaintiff's motion (ECF No. 10) for judgment on the pleadings, and Defendant's cross-motion (ECF No. 16) for an order remanding the matter to the Commissioner.   The parties agree that the Commissioner's decision must be reversed, but disagree as to whether the remand should be for further administrative proceedings or calculation of benefits.   For reasons discussed below, the matter is remanded to the Commissioner for further limited administrative proceedings consistent with this Decision and Order.

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

However, the ALJ must conduct a further analysis where, as here, there is evidence that the claimant is impaired by drug and/or alcohol addiction:

> When there is medical evidence of Plaintiff's drug or alcohol abuse, the ALJ must also determine whether the claimant has the medically determinable impairment of Drug and Alcohol Addiction ("DAA"). *See* SSR 13-2p, 78 Fed. Reg. 11939 (Feb. 20, 2013). An ALJ undertaking this inquiry must first proceed through the usual five-step sequential evaluation to determine whether the claimant is disabled within the meaning of the Act. *See Bowen*, 476 U.S. at 470–71. The ALJ must conduct this initial inquiry "without segregating out any effects that might be due to substance use disorders." *Colbert v. Comm'r of Soc. Sec.*, No. 18-CV-702, 2019 WL 6648562, at *3 (W.D.N.Y. Dec. 6, 2019).
>
> If the claimant is found to be disabled, then the ALJ must consider "whether the substance abuse is a contributing factor material to the determination of disability—that is, whether the claimant would still be found disabled if she stopped using drugs or alcohol." *Baker v. Saul*, No. 18-CV-6411L, 2020 WL 702517, at *1 (W.D.N.Y. Feb. 12, 2020) (internal quotation marks omitted). When determining the materiality of the DAA, the ALJ must use the bifurcated sequential analysis in Social Security Ruling 13-2p, which consists of six findings. SSR 13-2p, 78 Fed. Reg. at 11939. First, the ALJ must determine whether the claimant has DAA. *Id*. at 11941. If the ALJ finds that the claimant does, then the ALJ next must determine whether all of the claimant's impairments, including DAA, render her disabled. *Id*. If this analysis yields a finding that the claimant is disabled, then the ALJ must move to the third finding to determine whether DAA is the only impairment

---

("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

the claimant has. *Id*. If DAA is the only impairment, then the DAA is material, and the claimant is not disabled. *Id*.

However, if DAA is not the only impairment the claimant has, then the ALJ must move to the fourth finding to determine whether the other impairments are disabling by themselves, without considering DAA. *Id*. If the other impairments are not disabling by themselves, then the DAA is material. *Id*. But if the other impairments are disabling by themselves, the ALJ must consider whether the DAA causes or affects the claimant's impairments for the fifth finding. *Id*. If DAA causes or affects the claimant's impairments, then in most cases, the ALJ must make the final finding to determine whether the other impairment(s) would improve to the point of nondisability in the absence of DAA. *Id*. If the ALJ determines that they would improve to the point of nondisability, the DAA is material, and the claim must be denied. *Id*.[6] The claimant bears the burden of proving that her DAA is not a material factor in such claims. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123–25 (2d Cir. 2012).

*Melissa P. v. Comm'r of Soc. Sec.*, No. 23-CV-01314-FPG, 2024 WL 4635045, at *2 (W.D.N.Y. Oct. 31, 2024).   Because the claimant bears the burden of proof on this point, in the situation of "a tie," the claimant does not prevail simply because there is conflicting evidence regarding materiality. *See, e.g., Bradley F. v. Comm'r of Soc. Sec.*, No. 21-CV-0529MWP, 2023 WL 6163432, at *3-4 (W.D.N.Y. Sept. 21, 2023) ("I disagree with plaintiff's contention that SSR 13-2p imposes a heightened evidentiary standard in cases involving DAA and co-occurring mental disorders. In essence, plaintiff maintains that where the record contains conflicting evidence regarding mental impairments in the

---

[6] "Conversely, if the ALJ concludes that the claimant's remaining limitations are disabling, a finding will be made that the claimant was disabled independent of the drug addiction or alcoholism and that the same was not a contributing factor material to the determination of disability. See 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii)." *Jessica Marie S. v. O'Malley*, No. 5:23-CV-370 (DNH/MJK), 2024 WL 2880641, at *2 (N.D.N.Y. Apr. 19, 2024), report and recommendation adopted sub nom. *Jessica S. v. Comm'r of Soc. Sec.*, No. 5:23-CV-370, 2024 WL 2291703 (N.D.N.Y. May 21, 2024).

absence of DAA, a claimant is entitled to the benefit of the doubt and should be awarded benefits. I have already rejected such an interpretation of SSR 13-2p.   [Moreover,] plaintiff's position is refuted by controlling Second Circuit authority holding that it is the claimant who bears the burden of proving whether drug and alcohol abuse is material to the disability determination. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 123 ("we agree with the weight of the authority that claimants bear the burden of proving DAA immateriality") (collecting cases), *cert. denied*, 570 U.S. 919 (2013).") (other citations omitted).   On the other hand, a finding by an ALJ that substance abuse is material to a claimant's disability must be supported by substantial evidence of such fact, which usually will involve evidence from a period of abstinence. *See, Ervin-Atkinson v. Comm'r of Soc. Sec.*, No. 18-CV-1056-FPG, 2020 WL 830434, at *2 (W.D.N.Y. Feb. 20, 2020) ("[E]vidence from a period of abstinence is the best evidence for determining whether an [impairment] would improve to the point of nondisability." SSR 13-2p, 2013 WL 621536 (2013). Where co-occurring mental health disorders are present, the SSA "need[s] evidence from outside of ... highly structured treatment settings demonstrating that the [plaintiff's] co-occurring mental disorder(s) has improved, or would improve, with abstinence" to find that substance abuse is material to a disability finding. *Id*."); *see also, Bukowski o/b/o Bukowski v. Berryhill*, No. 1:15-CV-00268-MAT, 2017 WL 5789990, at *2 (W.D.N.Y. Nov. 29, 2017) ("In order to find a claimant not disabled, SSR 13-2p requires that an ALJ have positive evidence showing that Plaintiff's severe mental impairment would improve to the point of nondisability in the absence of her DAA.").

PROCEDURAL HISTORY

The Court takes the following procedural history largely from the "Relevant Procedural History" section of Defendant's memorandum of law, ECF No. 16-1, to which Plaintiff has not objected, with the Court's own additions from the record as noted.

> Plaintiff filed her first claim for supplemental security income (SSI) under Title XVI of the Social Security Act in May 2017. Tr. 71–80. At the time of her application, Plaintiff claimed that she was disabled by her drug and alcohol abuse, cognitive behavioral issues, depression, stress, anxiety, learning disability, chronic back/neck pain, hand injuries, and allergies. Tr. 72–3. Plaintiff's claim was denied after initial agency review in August 2017, and she did not seek reconsideration. Tr. 71–80.

> Plaintiff filed a second claim for SSI in January 2019, this time alleging disability due to anxiety, dizzy spells, a back and spinal injury, and depression. Tr. 81–95, 203–08. Plaintiff's second claim was denied after initial agency review in February 2019, and upon reconsideration in May 2019. Tr. 81–112. At Plaintiff's request, her claims then went before an ALJ for a hearing and de novo review in May 2020, at which time Plaintiff requested that her first claim be reopened, and her alleged onset date considered to be May 2017. Tr. 39–70. In September 2020, the ALJ found sufficient grounds for reopening the first claim (Tr. 10), but found, in pertinent part, that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability because she would not be disabled if she stopped the substance use. Tr. 23. As a result, the ALJ denied Plaintiff's claim. Tr. 10–29.

RCF No. 16-1 at pp. 3-4.

In particular, applying the five-step sequential evaluation, the ALJ made the following findings: 1) Plaintiff had not engaged in substantial gainful activity since May 12, 2017; 2) Plaintiff had severe impairments consisting of mild levoscoliosis of the lumbar spine, spondylosis of the cervical spine, schizoaffective disorder,

learning disorder, and polysubstance use disorder; 3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, even when including her substance abuse; 4) Plaintiff had the residual functional capacity to perform less than a full range of sedentary work, limited to simple work activity associated with unskilled, non-production-rate work involving occasional interaction with supervisors, co-workers and the public, with a recognition that Plaintiff "would be absent from work at least two times per month due to substance abuse";[7]   5) Plaintiff had no past relevant work, having never engaged in substantial gainful activity even prior to the alleged disability onset date; but 6) considering Plaintiff's age, education, work experience, residual functional capacity and substance abuse disorder, there were no jobs that Plaintiff could perform, and she was therefore disabled.

Regarding Plaintiff's age and education, the ALJ found that Plaintiff was "a younger individual age 18-44" with "a marginal education." Tr. 19.   Under the Medical Vocational Grids, Appendix 2 to Subpart P of Part 404, for a younger individual (18-44) limited to sedentary work, with no work history and whose education level is "limited or marginal, but not illiterate," the grids, rule 201.24, direct a finding of "not disabled."

Notably, in making his RFC finding, the ALJ found that the two medical opinions that were most-supportive of Plaintiff's claim, the opinion of treating physician James Maxwell, M.D. ("Maxwell"), concerning Plaintiff's physical

---

[7] Tr. 14.

limitations, and the opinion of consultative examiner Adam Brownfeld, Ph.D. ("Brownfeld"), concerning Plaintiff's mental impairments, were unpersuasive since they were inconsistent with much of the other evidence of record.

However, the ALJ further found that if Plaintiff stopped her substance abuse, her remaining limitations, while severe, would not or medically equal a listed impairment, and that her ability to concentrate, persist or maintain a pace would improve from markedly limited to only moderately limited, and she would not be expected to miss two or more days of work per month. Tr. 20-21.   Significantly on this point, the ALJ characterized Dr. Brownfeld's consultative report as indicating that Plaintiff's "substance abuse [was] a primary cause of her difficulties." Tr. 22.

Plaintiff appealed the ALJ's determination, but "[t]he Appeals Council denied Plaintiff's request for review in February 2021. Tr. 1–6." ECF No. 16-1 at pp. 3-4.

Thereafter, "Plaintiff sought judicial review of the agency's decision in this Court, and the parties stipulated to a remand in June 2022. Tr. 2157, 2231–32." ECF No. 16-1 at pp. 3-4.   The Court's remand order stated that the matter was remanded "for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g)," "including offering Plaintiff a *de novo* hearing, consistent with the parties' stipulation." *See*, 6:21-cv-06281 EAW, ECF No. 14.

Upon remand to the Commissioner, on July 28, 2022, the Appeals Council issued an order remanding the case to the ALJ for resolution of several issues. Tr.

2162-2164.    Primarily, the Appeals Council indicated that when making his materiality finding concerning Plaintiff's substance abuse, the ALJ had not properly considered that the consultative opinion of Dr. Brownfeld had been conducted at a time when Plaintiff claimed to have been abstinent from drugs and alcohol for several months.    On this point, the Appeals Council stated:

> Dr. Brownfeld stated that his evaluation was 'consistent with psychiatric, substance use, and cognitive problems' and was during a time when the claimant reportedly had stopped using alcohol and cocaine three months prior and graduated from a substance treatment facility a month prior.    Dr. Brownfeld did not attribute the claimant's marked limitations solely or primarily to the claimant's substance abuse as stated in the [ALJ's] decision but indicated the claimant's co-occurring diagnoses were a schizoaffective disorder and specific learning disorder, in addition to alcohol and cocaine use disorders, and all these disorders were contributory.    Thus, Dr. Brownfeld's opinion conflicts with and does not support the [ALJ's] finding that the claimant's absences [from work] would be primarily due to her substance abuse, and that without substance abuse, she would be able to sustain regular attendance at work.    Moreover, Dr. Brownfeld gave a guarded prognosis and recommended individual psychological therapy and psychiatric intervention, not specifically substance treatment.

> As noted in the decision, Dr. Brownfeld is the only medical source who opined that the claimant has 'marked' limitations due to [her] impairments, and this opinion was given during a period when the claimant had reportedly stopped using substances three months prior to her consultative examination and was likely sober at the time of the examination.    Dr. Brownfeld's report does not suggest that the claimant was impaired due to substances or inebriated during his examination.    Further evaluation of Dr. Brownfeld's opinions and the claimant's maximum residual functional capacity with and without substance abuse is necessary.

Tr. 2163.    The Appeals Council ordered the ALJ to obtain additional evidence, give further consideration to Plaintiff's residual functional capacity, evaluate the

9

persuasiveness of all medical opinions, including the opinion of Dr. Brownfeld, obtain supplemental evidence from a vocational expert; and, if Plaintiff was "again found disabled with her substance abuse disorders," make the necessary findings as to the materiality of such disorders. Tr. 2163-2164.

Following such remand, the ALJ conducted a new hearing in accordance with the Appeals Council's order.    More specifically,

> [a]fter allowing Plaintiff the opportunity to supplement the record with evidence from the period that had elapsed since the prior decision, the ALJ held a second hearing on March 9, 2023. Tr. 2119–56. In addition to hearing more testimony from Plaintiff [and a vocational expert], the ALJ heard testimony from two medical experts: Subramanian Krishnamurthi, M.D. (see resumé at Tr. 4556–57), and Jennifer Blitz, Psy.D. (see resumé at Tr. 2377–2380). Dr. Krishnamurthi testified that based on his review of the medical records, Plaintiff had the physical RFC to lift or carry 10 pounds frequently and 20 pounds occasionally; stand or walk with normal breaks for a total of 6 hours in an 8-hour day; sit with normal breaks for a total of 6 hours in an 8-hour workday; perform pushing and pulling motions with the upper and lower extremities within those weight restrictions; reach above shoulder level bilaterally on a frequent basis; and perform activities requiring bilateral manual dexterity for both gross and fine manipulation. Tr. 2130–31.

> Dr. Blitz testified that with respect to Plaintiff's mental impairments, "there are numerous diagnoses that appear in the record, but the ones that are supported by documents and signs and symptoms are alcohol use disorder, stimulant abuse disorder, cannabis use disorder, unspecified depressive disorder, [and] substance induced mood disorder." Tr. 2139.   Further, she observed that Plaintiff's mental RFC was "complicated due to substance abuse," but that "in totality, including the substance abuse," Plaintiff was moderately impaired in understanding, remembering and applying information, and markedly impaired in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself. Tr. 2140–41.  [Blitz further indicated that Plaintiff would be unable to interact with supervisors, co-workers or the public, and would be off-task at least 20 percent of each workday.]   Nevertheless, Dr. Blitz also testified that if

10

> Plaintiff stopped the substance abuse, then Plaintiff would remain moderately impaired in understanding, remembering and applying information due to "some intellectual deficits," but her impairments would be [only] mild in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself. Tr. 2143.

ECF No. 16-1 at pp. 4-5.   Blitz also indicated that without the substance abuse, Plaintiff would be off task no more than 10% of each workday. Tr. 2145.

Blitz further opined that while there were some "reported periods of abstinence" in the medical records, there were no "well documented periods of abstinence." Tr. 2142.   As part of the questioning of Dr. Blitz, the ALJ referenced the fact that while Dr. Brownfeld's report, written in February 2019, had indicated that Plaintiff claimed to have been sober and abstinent from drugs for three months at the time of the examination, there were numerous other records from 2019 in which Plaintiff had admitted to consistently using alcohol and drugs. *See, e.g.*, Tr. 2142 ("[W]e go to Exhibit 22F, sone month after the CE was done in *February 2019* [by Dr. Brownield], she reported she drinks three to four beers a day and is using $20 of crack cocaine.") (emphasis added); *see also, id*. at 2142 (referencing Exhibits 19F, 25F, 26F, 27F, 28F, 31F as documenting Plaintiff's continued substance abuse).

The ALJ also took testimony from the VE.   In connection with such testimony, there was a discussion of Exhibit 18E, page 38 (ECF No. 5 at p. 347), indicating that Plaintiff had passed the seventh grade in public school, Tr. 2151,[8]

---

[8]  The record also contains additional records from Plaintiff's time at Josh Lofton Jr. High School. *See, e.g.*, ECF No. 5 at p. 349.   Plaintiff was, however, classified as emotionally disturbed and placed in

even though Plaintiff testified earlier in the hearing that she had only remained in school to Third grade. Tr. 2126, 2144.

On April 25, 2023, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 2092-2110.    Regarding this decision,

> the ALJ found at step one of the sequential analysis that Plaintiff had not engaged in "substantial gainful activity" since January 1, 2017.3 Tr. 2095. The ALJ then found that Plaintiff had [the following] severe medically determinable impairments: cervical and lumbar degenerative disc disease; chronic pain syndrome; alcohol ("ETOH") abuse disorder, stimulant use disorder, cannabis use disorder; unspecified depressive disorder; substance-induced mood disorder; and substance-induced psychiatric disorder. Tr. 2095. Because Plaintiff's severe impairments included impairments that are considered DAA, the ALJ conducted the bifurcated analysis outlined in SSR 13-2p.
>
> At the second finding in the DAA evaluation process, the ALJ found that, including Plaintiff's DAA, Plaintiff was disabled by virtue of her impairments meeting the criteria of listing 12.04, depressive disorders, in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 2095. DAA was not Plaintiff's only impairment, however, so the ALJ proceeded to the fourth finding in the DAA evaluation process and found that if Plaintiff stopped her substance use, she would not have an impairment that met the listings. Tr. 2098–99. In fact, the ALJ found that absent the DAA, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with some exertional, manipulative, environmental, and mental restrictions. Tr. 2099–109. After considering Plaintiff's age, education, work experience, and RFC absent her DAA, and the testimony of the vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a maid (Dictionary of Occupational Titles ("DOT") No. 323.687-014), cafeteria worker (DOT No. 311.677-010), and mail clerk (DOT No. 209.687-026). Tr. 2109. Accordingly, the ALJ found that Plaintiff's DAA was a contributing factor material to the determination of disability, and therefore that Plaintiff was not entitled to SSI benefits. Tr.

---

special education classes.    See, e.g., id. at p. 352.

2109–10.

ECF No. 16-1 at pp. 7-8 (footnotes omitted).

In making this determination, the ALJ found that Plaintiff was not credible for various reasons. For example, the ALJ cited numerous reports of normal physical findings that were inconsistent with Plaintiff's claims related to her back and shoulder pain, as well as several reports from doctors suggesting that Plaintiff was malingering and/or improperly seeking pain medication. The ALJ also noted several instances in which Plaintiff had not followed through with treatment recommendations concerning her physical ailments. *See*, Tr. 2108 ("While I must view the record in the light most favorable to the claimant, no positive inference can be drawn from her multiple assessments of malingering and/or drug seeking behavior, along with [her] sometimes contradictory statements regarding her substance abuse, her noncompliance with treatment, and her resistance to clinical examinations in the treatment setting.").

Related to his credibility finding, and pursuant to the Appeals Council's direction that the ALJ take a second look at Dr. Brownfeld's report, the ALJ found that Brownfeld's report was not a reliable indicator of Plaintiff's limitations when abstaining from alcohol and drugs, since Brownfeld's understanding that Plaintiff had been abstinent for three months was based only on what Plaintiff told him. The ALJ observed that Plaintiff frequently lied about being abstinent, and found that the record as whole showed no significant period of abstinence:

The opinion of Dr. Brownfeld is not persuasive when the claimant's

substance abuse is not taken into consideration.  . . .  [T]he claimant reported that she had been abstinent for approximately three months prior to the February 2019 consultative examinations, and she was not noted to be visibly intoxicated by Dr. Brownfeld;   however, this reported abstinence is not documented elsewhere in the medical evidence.   When the claimant sought rehabilitation approximately one month later, in March 2019, her reports are consistent with continuous alcohol abuse, though she did indicate that he last date of cocaine use was October 16, 2018. Additionally, the record shows multiple instances when the claimant gave conflicting histories of her substance abuse within the same interview with various providers, or that she made claims that were inconsistent with urine drug screenings.    Furthermore, the opinion of Dr. Brownfeld is not consistent with the opinion of Drs. Ransom or Blitz regarding the claimant's functioning when her substance abuse is not taken into consideration, or statements from the claimant's primary care providers and the Monroe Co. DHS evaluators that the claimant's primary limitations are imposed by her substance abuse.

Tr. 2108 (citations to record omitted); *see also*, Tr. 2104 ("[T]he claimant has *not had any significant periods of abstinence* during the period at issue; even when she was in treatment through the Salvation Army, the claimant had periods of relapse, per contemporaneous emergency department reports.") (emphasis added); Tr. 2102 ("At that time, [April 19, 2018], the claimant also reportedly gave an unreliable history of her sobriety, stating that she had been sober since September 30, 2017, but offhandedly discussed drinking the previous night and urine drug screen from April 13, 2018, was positive for alcohol."); Tr. 2108 ("The State psychological consultants concluded that, 'while not using substances [the claimant] psychiatrically seems capable of the basis demands of simple work.' This conclusion is persuasive as it is consistent with the opinions of Dr. Blitz and Dr. Ransom, and takes into consideration that the preponderance of the claimant's

most significant psychiatric symptoms, such as hallucinations and suicidal ideations, have been attributed to substance abuse.") (citations to record omitted).

The ALJ further found that Plaintiff's co-occurring mental impairments would improve if she stopped abusing drugs and alcohol, citing the following evidence: 1) the opinion testimony of Dr. Blitz, Tr. 2099 & 2107; 2) "statements of Dr. Petrescu, Ms. Armosino-Hoderlein, and the Monroe County DHS assessment support[ing] a finding that the claimant's substance abuse is material to her disability," Tr. 2098; and 3) opinions by "State psychological consultants conclude[ing] that, 'while not using substances [the claimant] psychiatrically seems capable of the basic demands of simple work," Tr. 2108.

Following the ALJ's denial of Plaintiff's claim, on August 16, 2023, Plaintiff filed this action.   Plaintiff contends that the Commissioner's decision must be reversed and remanded for the calculation of benefits, primarily because the ALJ erred in finding that Plaintiff's DAA was material, based on medical opinions alone, unsupported by other evidence of Plaintiff's functioning during a period of abstinence. *See, e.g,* Plaintiff's Memo of Law, ECF No. 10-1 at p. 17 ("[T]he ALJ twice attributed Plaintiff's debilitating limitations solely to DAA when there is no evidence for the findings."); *see also, id*. ("The ALJ failed to identify substantial evidence supporting the Step 3 and RFC findings in the absence of DAA."); *id*. at 18 ("The ALJ erred . . . when adopting Dr. Blitz's opinion without adequately comparing her opinion to evidence obviously contradicting her opinion regarding DAA materiality."); *id*. at 20 ("Dr. Blitz's opinion is insufficient to constitute

15

substantial evidence given that the record does not contain evidence sufficient to show the effects of Plaintiff's mental impairments apart from DAA."); *id*. at 23 ("[T]he ALJ failed to explain why the marked limitations would no longer exist if Plaintiff stopped the substance use[.]").

Plaintiff further maintains that there is no way to "parse out" her substance abuse from her other mental limitations, and that consequently the Commissioner must find her DAA immaterial. *See, id*. at p. 26 ("The record shows that Plaintiff's co-occurring mental health disorders were intertwined with substance abuse, and, when DAA cannot be separated out from the co-occurring mental health disorders, the ALJ must find DAA is not material.") (citing SSR 13-2p, other citations omitted). Plaintiff maintains that remand solely for calculation of benefits is therefore required. *Id*. at p. 27.

Plaintiff alternatively contends that remand is required for the following additional reasons: The ALJ failed to identify substantial evidence supporting the mental RFC finding; it was improper for the ALJ to find that the reference to abstinence in Dr. Brownfeld's report was unreliable, when the Appeals Council had not done so; the ALJ was inconsistent in his evaluations of Brownfeld's report; the ALJ failed to adequately consider that Plaintiff had mental health impairments that pre-dated her substance abuse; the ALJ erred in relying on Dr. Krisnamurthi's opinion regarding Plaintiff's physical impairments, since the opinion is not supported by the record; the ALJ erred in making a physical RFC finding in his second ALJ decision that was less favorable to Plaintiff than the one in the first

16

ALJ decision, since the Appeals Council did not note any error with the first finding; and the ALJ mischaracterized the record, such as by incorrectly asserting that it showed Plaintiff engaging in "drug seeking behavior."

Defendant opposes Plaintiff's motion insofar as it seeks remand solely for calculation of benefits, but agrees that remand "is necessary for further evaluation of the listings, Dr. Blitz's opinion, and whether Plaintiff would be disabled in the absence of substance abuse pursuant to the analysis set forth in SSR 13-2p." ECF No. 16-1 at p. 3. For instance, Defendant states:

> In the present case, the ALJ found that Dr. Blitz's assessment that Plaintiff would have only mild limitations in three domains—interacting with others; concentrating, persisting, and maintaining pace; and adapting and manager herself—in the absence of DAA was not consistent with the record. On remand, the ALJ should further explain why this opinion was inconsistent with the record, and why the record instead justified moderate limitations in these areas.

ECF No. 16-1 at p. 9. Defendant further asserts that Dr. Blitz's opinion, concerning Plaintiff's limitations in the absence of DAA, does not comply with SSR 13-2p since it "does not make sufficient reference to the specific evidence underlying her opinions, particularly her opinion that were Plaintiff to stop her substance abuse she would have only mild limitations in most of the paragraph B criteria," and that "remand is warranted  for further record development and clarification." *Id*. at p. 10. However, Defendant maintains that remand for calculation of benefits would be improper, "because Plaintiff has failed to provide persuasive proof of disability during the period at issue": "She has failed to

demonstrate that her physical impairments preclude full-time work, and the record does not conclusively establish that her DAA was not material to the limiting effects of her mental impairments." Id. at pp. 10-11.   Regarding Plaintiff's alleged failure to prove that she is disabled even apart from her DAA, Defendant additionally states:

> [Here], the agency and the Court are faced with a Plaintiff who has had no credible periods of abstinence (Tr. 2096, 2142), coupled with the opinion of a medical expert that Plaintiff's mental impairments would not be disabling absent DAA (Tr. 2143). Although there are certain gaps in Dr. Blitz's explanation for that opinion, as explained above, the ALJ may well find that Plaintiff is not disabled after filling those gaps on remand. See SSR 13-2p, 2013 WL 621536, at *9 (where the claimant does not have a period of abstinence, "[w]e consider the opinion of an acceptable medical source sufficient evidence regarding materiality as long as the acceptable medical source provides support for their opinion"). In other words, the Court is not here faced with a situation in which Plaintiff was "denied benefits because the ALJ reached a mistaken conclusion on an otherwise complete record," but rather with a case where further record development is warranted to allow the ALJ to make any appropriate determination in either direction. *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). Because "further findings" would allow the proper disposition of Plaintiff's claim, remand for further proceedings is "particularly appropriate" in this case. *Id*.

*Id*. at pp. 16-17.

Plaintiff filed a reply in which she opposes the Commissioner's motion and reiterates that remand for calculation of benefits is required, purportedly since "additional proceedings are not necessary and would further delay an inevitable full favorable decision." ECF No. 17 at p. 2.   Regarding the alleged inevitability of an eventual ruling in her favor, Plaintiff essentially argues that she must prevail since the ALJ found, at Step Three, considering all her impairments including DAA,

that she meets a listed impairment, and since there is no evidence in the record, apart from Dr. Blitz's unsupported opinion, from which the ALJ could find, on remand, that her other impairments would improve to the point of nondisability in the absence of DAA. *See*, ECF No. 17 at p. 4 ("Dr. Blitz did not identify periods of abstinence that would show the separate effects of DAA and mental impairments. Plaintiff has a co-occurring mental health disorder, and the Court has found, where limitations associated with substance abuse cannot be parsed out from mental health limitations, substance abuse cannot be held material to a finding of disability.").[9]    Plaintiff further contends that the ALJ's decision violates the Appeals Council's remand order insofar as it finds that Dr. Brownfeld's opinion is not reliable evidence of Plaintiff's functioning during a period of abstinence, and insofar as it finds that Plaintiff is physically capable of performing light work, after previously finding, in his first decision, that Plaintiff was physically capable of only sedentary work.

Defendant filed a sur-reply, ECF No. 20, which maintains, first, that Plaintiff's arguments concerning the ALJ running afoul of the Appeals Council's remand order are meritless, since nothing in the Appeals Council's order prevented the ALJ from making findings on remand that are different from the findings in the ALJ's prior decision.    Further, Defendant insists that remand would not be

---

[9]  See also, ECF No. 17 at pp. 2, 4 (" [T]he outcome is certain given that the ALJ has twice found that evidence is sufficient to establish disability in the absence of DAA.   . . .   Plaintiff's DAA is not material given that the record does not contain evidence that Plaintiff's limitations would persist in the absence of DAA. See Com. Br. 11-15. The Court should also reject Defendant's arguments that new findings are required, including "further development of the record and further fact-finding", when the existing facts are clear.

pointless, contrary to what Plaintiff claims, since the problem with the ALJ's decision concerning DAA is not that there is no evidence in the record that could support it, but only that Dr. Blitz's testimony did not sufficiently explain the evidence upon which her opinion was based:

> [T]he Commissioner [is arguing] that remand [is] required to clarify Dr. Blitz's references to the record in satisfaction of the requirements of SSR 13-2p. Where claimants such as Plaintiff are found to have a mental disorder co-occurring with her DAA, SSR 13-2p provides that "adjudicators [are not permitted] to rely exclusively on medical expertise and the nature of a claimant's mental disorder." SSR 13-2p, 2013 WL 621536 at *9. Dr. Blitz testified that she had "reviewed the record sufficiently to render an opinion on the claimant's conditions" (Tr. 2138), and that she could rate the paragraph B criteria for Plaintiff if she stopped the substance use (Tr. 2143). <u>Yet because Dr. Blitz's testimony does not make sufficient reference to the specific evidence underlying her opinions, further development of her testimony is needed</u>. Hence, the Commissioner does not maintain that Dr. Blitz's *opinion* is incorrect, only that her *explanation* of the opinion was insufficient to satisfy SSR 13-2p.

ECF No. 20 at p. 6 (underlining added by the Court, italics in original).

## DISCUSSION

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—
> even more so than the 'clearly erroneous' standard, and the
> Commissioner's findings of fact must be upheld unless a reasonable

factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*

*v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on *post hoc* rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id. See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *Banyai v.*

*Berryhill*, 767 F. App'x at 177 ("An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered."); *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

<u>Remand for Calculation of Benefits is Not Appropriate</u>

With these principles in mind, the Court finds that remand solely for calculation of benefits is not warranted. *See, e.g., Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 263 (2d Cir. 2021) ("[T]he record here provides 'persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.' *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Where 'no purpose would be served by' a remand for additional evidence, we instead remand for calculation of benefits. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (remanding for the sole purpose of calculating award of benefits).").

Plaintiff maintains that such a remand is required since the ALJ violated the mandate rule[10] by exceeding the scope of the Appeals Council's remand order. Plaintiff

---

[10] *See, e.g., Justin S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1575(ATB), 2022 WL 306445, at *4–5

states, for example, that the ALJ violated the Appeals Council's remand order by finding that the reference in Dr. Brownfeld's report to a three-month period of abstinence was unreliable, inasmuch as it was based on what Plaintiff told Brownfeld, when the Appeals Council had not similarly questioned that aspect of Brownfeld's report.    Plaintiff similarly contends that the ALJ violated the mandate rule by finding her capable of light work in his second decision, after previously finding her capable of sedentary work.    However, the Court does not agree that the ALJ violated the mandate rule.

As noted earlier, the Court's remand order broadly indicated only that remand was for further administrative proceedings, to include offering Plaintiff a *de novo* hearing. Plaintiff was offered, and accepted, a *de novo* hearing.    Specifically, at the start of the second hearing, the ALJ explained to Plaintiff and her representative that he would be making all new findings and taking testimony from two new medical experts, Dr. Krishnamurthi and Dr. Blitz, concerning Plaintiff's physical and mental impairments, Tr. 2123, 2125.    Plaintiff expressly indicated that she had no objection to the new doctors testifying or to the ALJ making new findings. Tr. 2128, 2138.    Accordingly, the ALJ was not bound by his findings in the first decision.

---

(N.D.N.Y. Feb. 2, 2022) ("There is an "administrative version" of the mandate rule contained in the applicable SSA regulations, which provides that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand. However, where an issue is not precluded by remand order or the judgment of the court in the prior judicial review, that issue may be decided differently on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision.") (citations and internal quotation marks omitted).

Moreover, although the Appeals Council's remand order was focused primarily on directing the ALJ to reconsider Dr. Brownfeld's report, it also directed the ALJ, without limitation, to obtain additional evidence, give further consideration to Plaintiff's residual functional capacity, *evaluate the persuasiveness of all medical opinions*, "*including but not limited to those of Dr. Brownfeld*," Tr. 2164 (emphasis added), and obtain supplemental evidence from a vocational expert.   Consequently, the Appeals Council's remand order did not expressly or impliedly place any limitations on the scope of the hearing to be conducted by the ALJ, except that it should *include* reconsideration and evaluation of Brownfeld's opinion. *See, Randolph D. v. Comm'r of Soc. Sec.*, No. 23-CV-1021-FPG, 2024 WL 4751709, at *3 (W.D.N.Y. Oct. 16, 2024) ("[C]ontrary to Plaintiff's argument, nothing would bar the ALJ from fashioning a less restrictive RFC on remand[, since,] '[i]n the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for disability benefits.' *Thompson v. Astrue*, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008); *see also Bryan L. v. Comm'r of Soc. Sec.*, No. 20-CV-393, 2021 WL 3726101, at *5 (W.D.N.Y. Aug. 23, 2021) (where the ALJ previously found the claimant capable of only light work, concluding that mandate rule did not preclude the ALJ from finding claimant capable of medium work on remand).").

Plaintiff nevertheless contends that it would be pointless to remand for further administrative proceedings, since the record contains no evidence from which the ALJ could parse out the effects of her DAA from the effects of her co-occurring mental impairments. *See, e.g.*, ECF No. 10-1 at pp. 23-24 ("[T]he record does not contain evidence where Plaintiff's substance abuse can be parsed out from mental health

limitations.  . . . [This purported] lack of documented abstinence would mean that the record lacks evidence showing that Plaintiff's impairments would improve if [she] stopped substance use, and DAA is not material.").   In other words, Plaintiff maintains that without a period of abstinence, any finding by the ALJ that Plaintiff's DAA is material to her disability would not be supported by substantial evidence.

However, the Court disagrees with this proposition.   For example, in *Cage*, the Second Circuit ruled that an ALJ's finding that the claimant's DAA was material to her disability was supported by substantial evidence, even though there was no extended period of sobriety:

> While the record does not reveal any extended periods of sobriety during the relevant period following Cage's May 2004 application date, it does include, *inter alia*, positive evaluations of Cage conducted during inpatient admissions when Cage did not have access to drugs or alcohol. Specifically, the record reflects that (1) mental status evaluations, though not ideal in all respects, demonstrated that she "made good eye contact," was "cooperative," spoke normally, had coherent or linear thought processes, had average intelligence and knowledge, and was alert; (2) Cage reportedly had the ability to "perform rote tasks," "follow simple instructions" and "handle her finances"; and (3) Cage was evaluated as being able to "interact with others adequately." And, as to the effect of Cage's DAA on her other impairments, the record included the following evidence: (1) an addiction therapist's opinion that Cage's DAA "made worse" her medical and emotional issues; (2) Cage's admission that she had attempted suicide only when under the influence; (3) Cage's admission that her DAA was "not helpful" to her mental health; (4) that Cage had used crack cocaine the two times she reported hearing voices; and (5) that Cage told a treating physician that she was depressed because she had spent her money on cocaine.
>
> Taken together, this is "relevant evidence [that] a reasonable mind might accept as adequate to support [the] conclusion," *Zabala v. Astrue*, 595 F.3d

> 402, 408 (2d Cir.2010) (internal quotation marks and citation omitted), that Cage's difficulties with social functioning, and with concentration, persistence and pace, would improve from "marked" to "moderate" in the absence of DAA. Faced with this substantial evidence, we must uphold these findings and, consequently, the ALJ's determination that Cage would not be disabled were she to discontinue her drug and alcohol abuse.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 127.

Here, Dr. Blitz indicated that there were no well-documented periods of abstinence, but that it was nevertheless her opinion that if Plaintiff stopped abusing substances her other mental impairments would improve. Tr. 2142-2145.   Blitz generally indicated that her testimony was based on her review of the medical records, but did not indicate what particular evidence supported that opinion.   Presumably, upon remand Blitz can clarify the basis for her opinion.   Additionally, the ALJ indicated that other evidence in the record supported his materiality finding, such as "statements of Dr. Petrescu, Ms. Armosino-Hoderlein, and the Monroe County DHS assessment support[ing] a finding that the claimant's substance abuse is material to her disability," Tr. 2098, and opinions by "State psychological consultants conclude[ing] that, 'while not using substances [the claimant] psychiatrically seems capable of the basic demands of simple work," Tr. 2108. Consequently, the Court does not find that Plaintiff is necessarily entitled to prevail here if the correct legal standards are applied, and her request for remand for calculation of benefits is therefore denied.

Instead, the Court will remand the matter for further administrative proceedings. However, such remand is <u>not</u> for an entirely new *de novo* hearing, but only for reconsideration of the ALJ's determination regarding the materiality of Plaintiff's DAA.

As already discussed, Plaintiff maintains that there is no substantial evidence of record to support the ALJ's materiality determination, while the Commissioner contends that there is such evidence, but that Dr. Blitz did not adequately explain the evidence upon which her opinion was based.   Accordingly, on remand, the ALJ may take additional evidence, limited to just additional oral or written testimony from Dr. Blitz, explaining the evidentiary basis for her opinion.[11]   Additionally, upon obtaining such additional evidence, the ALJ shall clarify whether he still finds that Plaintiff's DAA is material, and, if so, should clarify exactly what evidence, in addition to or apart from Blitz's opinion, if any, he is relying upon to support such finding.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is granted insofar as it requests reversal of the Commissioner's final decision, but is denied insofar as it requests remand solely for calculation of benefits. Defendant's cross-motion for an order remanding the matter to the Commissioner (ECF No. 16) is granted insofar as the matter is remanded to the Commissioner for further limited administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).   The Clerk is directed to enter judgment for

---

[11] *See, Manderville v. Kijakazi*, No. 21-62, 2022 WL 1013969, at *1 (2d Cir. Apr. 5, 2022) ("Under 42 U.S.C. § 405(g), a remand to the ALJ is proper "for further action" "on the motion of the Commissioner of Social Security made for good cause." Here, good cause existed to justify the district court's remand . . . "to reevaluate and weigh the opinions of [a] consultative examiner ... and treating physicians."   The ALJ may not, however, consider new evidence here. See 42 U.S.C. § 405(g) ("The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). We thus vacate the district court's judgment and remand with instructions for the district court to further remand to the ALJ to reevaluate the evidence as outlined by the district court, but to consider no new evidence.").

Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
February 14, 2025

ENTER:

CHARLES J. SIRAGUSA
United States District Judge